UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RADEMAKER, | No.  2:26-cv-0234 CSK P |
| Plaintiff, | |
| v. | <u>ORDER AND</u> |
| SIRCOYA WILLIAMS, et al., | <u>FINDINGS & RECOMMENDATIONS</u> |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff's motion for injunctive relief is before the Court.  As discussed below, it is recommended that plaintiff's motion for injunctive relief be denied without prejudice.

I.      PLAINTIFF'S COMPLAINT

Plaintiff, who identifies as transgender, alleges that since she was transferred to California Medical Facility ("CMF") on June 23, 2023, she has been refused single cell status, despite having been single celled for 25 years in state and county custody due to her mental health issues and gender status.[1]  Around January 25, 2024, plaintiff stopped receiving ducats for EOP groups

---

[1]  Plaintiff receives mental health care at the enhanced outpatient ("EOP") level.  "CDCR's Mental Health Services Delivery System Program Guide provides four levels of mental health care services:  Correctional Clinical Case Management System (CCCMS); Enhanced Outpatient (EOP); Mental Health Crisis Bed (MHCB) and inpatient hospital care . . . ."  <u>Coleman v. Brown</u>, No. CIV. S-90-520 LKK, 2013 WL 6491529, at *1 (E.D. Cal. Dec. 10, 2013).

1

and case manager for mental health treatment.  (ECF No. 1 at 5.)  Plaintiff sets forth multiple health care request forms submitted to multiple defendants from January 2024 through April 2024 that went unanswered.  Plaintiff twice wrote defendant Warden Daniel E. Cuevia concerning mental health professionals' failure to respond, but received no response.  On April 10, 2024, another prisoner was housed in plaintiff's cell, and plaintiff alleges she got into a cell fight due to seeking mental health care for months and not receiving it, causing her to deteriorate.  (Id. at 10.)  Plaintiff was injured during the use of force to break up the fight, and still takes medications for those injuries.  (Id.)  Plaintiff's requests for mental health care after the cell fight also went unanswered.  (Id. at 10-11.)  Later, during a mental health evaluation conducted by defendant Chelsea Hagen, Clinical Supervisor, in connection with the rules violation report ("RVR") plaintiff sustained after the cell fight, defendant Chelsea Hagen falsified a law enforcement state document, allegedly violating California Penal Code §§ 125, 134, by claiming plaintiff was stable in the weeks prior to the RVR and stating clinicians indicated that plaintiff was not demonstrating observable signs of any mental illness, despite plaintiff's multiple health care requests for mental health treatment.  (Id. at 22.)  Plaintiff alleges she filed a government tort claim against defendant Chelsea Hagen.  (Id. at 29.)

Plaintiff names eleven defendants employed at CMF:  Sircoya Williams, Warden; Daniel E. Cuevia, Warden (retired); Tracy Patterson, Chief, Mental Health; J. Spaich, Associate Warden, Health Care Access Unit; Jarrod Campbell, Chief Psychologist; Curtis Edwards, Clinical Psychologist; Sarah Smith, Clinical Psychologist; Benjamin Hulkower, Clinical Psychologist; Burris Lee, Clinical Psychiatrist; Shadavia France, Senior Supervising Psychologist; and Chelsea Hagen, Senior Psychologist.  Plaintiff also names defendants John and Jane Does 1-5.  (ECF No. 1 at 3.)

Plaintiff seeks a declaratory judgment and money damages.  (ECF No. 1 at 32.)

III.    MOTION FOR PRELIMINARY INJUNCTION

A.  Plaintiff's Allegations

Along with her complaint, plaintiff filed a motion for preliminary injunction.  (ECF No. 4.)  Plaintiff alleges that when she arrived at CMF, she was informed that she did not qualify for

2

single cell status because CMF follows its own rules allegedly based on a Mental Health Administration Memo written in December 2023, despite plaintiff being high risk of sexual assault due to her transgender status, mobility impaired (requiring a walker), incontinent, and having documented sexual abuse as a child, which causes very violent PTSD flashbacks, which is why plaintiff has been single celled for the last 25 years.  (Id. at 2.)  In addition, on July 18, 2019, plaintiff was stabbed seven times in the back and spent several days in the hospital with a punctured liver, allegedly due to mental health and custody staff not following state and federal PREA guidelines.  (Id. at 3.)  Plaintiff claims that from January 25, 2024 to April 26, 2024, she wrote 35 sick call requests for urgent mental health care, with no response from her mental health treatment team or their supervisors.  Plaintiff alleges this resulted in plaintiff's deterioration and a "PTSD use of force on plaintiff when they tried to place a violent inmate" into plaintiff's cell. (Id.)  Plaintiff alleges she sustained injuries from the cell fight.  The failure to provide the required mental health care caused plaintiff imminent harm by letting her deteriorate due to past trauma.  (Id. at 4.)  Plaintiff states "it is still going on" now with groups being canceled, causing harm to plaintiff's mental health.  (Id.)  Plaintiff claims the headquarters response sustaining the Office of Grievance decision granting intervention based on plaintiff's 35 sick call requests confirm defendant Chelsea Hagen lied and falsified documents in connection with her mental health evaluation of plaintiff following the RVR.  Plaintiff contends this record shows "a deliberate indifference of imminent harm to plaintiff's health, safety, and is having a[n] adverse effect on plaintiff's daily living."  (Id. at 5.)

Plaintiff contends it would not burden the state to house plaintiff in a single cell given they have done so for the last 25 years.  She argues such preliminary injunction would serve the public interest by saving funds for litigation and court costs if plaintiff is injured or killed by other inmates due to CMF not following federal guidelines, and would serve as an example to mental health staff not to falsify records.  (Id. at 6.)

Plaintiff seeks an order requiring defendants to immediately provide her with mental health care already mandated by federal decree, and order defendants to house her in a single cell. (Id.)

3

B. <u>Legal Standards</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that plaintiff will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. <u>Id.</u> at 20. A deficiency in any element precludes relief. <u>Id.</u> at 23.

As to the second <u>Winter</u> element, an injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again -- a likelihood of substantial and immediate irreparable injury." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983) (internal quotation marks and citation omitted). Speculative injury does not constitute irreparable harm. <u>See Caribbean Marine Serv. Co. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988). A presently existing actual threat must be shown, although the injury need not be certain to occur. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 130-31 (1969); <u>FDIC v. Garner</u>, 125 F.3d 1272, 1279-80 (9th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1020 (1998).

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. <u>See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend.").

In addition, the injunctive relief an applicant requests must relate to the claims brought in the complaint. <u>See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.</u>, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant plaintiff any relief. <u>Id.</u> at 636; <u>see also Beaton v. Miller</u>, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020)

4

(the court's jurisdiction is "limited to the parties in this action" and the pendency of an action "does not give the Court jurisdiction over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it.").

Finally, the Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials.  In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2); Villery v. California Dep't of Corr., 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016).  As the Ninth Circuit observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum."  Gilmore v. People of the State of California, 220 F.3d 987, 998-99 (9th Cir. 2000).

C.  Discussion

Here, plaintiff's complaint has not yet been screened, and no defendant has been served with process.  Until defendants have been served with process, this Court lacks personal jurisdiction over them, and may not grant the injunctive relief plaintiff seeks.  See Fed. R. Civ. P. 65(d)(2); Murphy Bros, Inc., 526 U.S. at 350.

Further, plaintiff fails to set forth sufficient facts demonstrating she will suffer irreparable harm without an injunction.  The incidents plaintiff relies on took place in early 2024, almost two years ago.  The only current allegation is plaintiff's claim that "it is still going on," claiming "groups are being cancelled, causing harm to plaintiff's mental health or 'NO' groups."  (ECF No. 4 at 4.)  But this conflicting statement is vague and insufficient to demonstrate she faces imminent harm.  Also, plaintiff does not address whether she was housed with another inmate from 2023 to March 2024, and plaintiff does not state whether she has been assigned a cellmate since the April 2024 incident and whether she is currently housed with another inmate.  In addition, plaintiff provides a copy of the September 24, 2024 grievance response stating that a

5

new offender grievance tracking system log number would be opened, and "[c]larity shall be provided to determine if 'in-cell assault/battery of a vulnerable high risk medical/mental class member who was previously stabbed for being transgender' meets the criteria set forth in Title 15, section 3481(a) to be a claim." (ECF No. 4 at 15.)  Further, it was directed that plaintiff's "claim that staff failed to screen the other inmate for compatibility prior to placement, resulting in a failure to protect shall be addressed." (Id.)  These findings suggest prison staff failed to properly evaluate the compatibility of the inmate involved in the April 2024 cell fight, but also suggest steps were taken afterward to avoid such incidents in the future.  Thus, this Court also finds that plaintiff fails to demonstrate that the balance of equities tips in plaintiff's favor, or that an injunction at this time is in the public interest.

Finally, while the allegations of failed mental health care provide a nexus between some of the injunctive relief sought and the Eighth Amendment claims raised in the complaint, the Court observes that plaintiff did not seek an order requiring single cell housing in the complaint. See Pac. Radiation Oncology, 810 F.3d at 633.

For the above reasons, the Court recommends that plaintiff's motion for injunctive relief (ECF No. 4) be denied without prejudice.

IV.    CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case.

Further, IT IS RECOMMENDED that plaintiff's motion for injunctive relief (ECF No. 4) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 02, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/rade0234.pi